**SO ORDERED.**

**SIGNED this 15th day of December, 2023.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

Leo Bernard Huninghake
Mary Lou Huninghake,

              Debtors.

Case No. 21-40090-12

### Memorandum Opinion and Order Granting in Part and Denying in Part Debtors' Motion to Modify and Denying in Part Debtors' Motion to Sell Real Property

Debtors Leo and Mary Huninghake operate a farming and cattle operation in Marshall County, Kansas. After creditor The Farmers State Bank of Westmoreland (Farmers State Bank or Bank) filed a foreclosure action against them in July 2020, Debtors filed a Chapter 12 bankruptcy

petition in February 2021. Debtors and Farmers State Bank clashed over multiple aspects of the Bank's claims and Debtors' pre- and post-petition treatment of their debts to the Bank, but ultimately settled their disputes in a global agreement approved by this Court in September 2021, which was then incorporated into a confirmed plan of reorganization in December 2021.

Debtors made payments on Farmers State Bank's claims—although reduced, as permitted by the settlement—their first plan year, but as their second plan year's payments approached and Debtors realized they would not be able to make even reduced payments, they sought modification of their plan from this Court.

Procedurally, Debtors' requested relief has evolved,[1] but Debtors now ask this Court for certain modifications to their payment dates, their payment amounts, and the provisions regarding sales of personal and real property. Debtors also filed a motion to sell a ten-acre parcel of real property mortgaged to Farmers State Bank.[2] In an earlier Order, this Court permitted the sale to proceed, but reserved a decision on the application of the proceeds

---

[1] Doc. 229 (motion to modify plan and for interpretation of plan), modified by Doc. 246 (Debtors' supplemental response in support of Debtors' motion to modify plan and for interpretation of plan).

[2] Doc. 255 (Debtors' motion seeking authority for the sale of real property free and clear of liens and encumbrances of record).

2

from that sale.[3]

After trial on these matters,[4] the Court concludes Debtors have not carried their burden to show their plan should be modified in many of the ways they seek, either under 11 U.S.C. § 1229[5] or otherwise, or that their proposal for the application of the proceeds from the sale of the ten-acre parcel of real property should be granted. The Court does believe, however, that Farmers State Bank consented in the parties' settlement agreement to sales of personal or real property secured to the Bank at any time during a calendar year, with application of proceeds to the next plan payment due, assuming other requirements of the parties' settlement agreement are met. In addition, Farmers State Bank now consents to moving the annual payment date for its claims. Finally, the Court concludes there is no provision in the parties' settlement agreement prohibiting Debtors from proposing sales of property in ways the Bank has not given its advance consent to within the parties' settlement. The Court therefore grants in part and denies in part Debtors' motion to modify[6] and denies the portion of Debtors' motion

---

[3] Doc. 274.
[4] Debtors appear by Justice B. King of Fisher, Patterson, Sayler & Smith. Farmers State Bank appears by David Prelle Eron of Prelle Eron & Bailey, P.A.
[5] All future references to Title 11 in the text shall be to the section number only.
[6] Doc. 229.

3

to sell regarding application of proceeds.[7]

## I.    Findings of Fact

### A.    *Parties' Prepetition Relationship*

Debtors farm and ranch over a thousand acres of real property in Marshall County, Kansas, almost all of which is subject to mortgages with Farmers State Bank.[8] Although Debtors have been customers of Farmers State Bank for over forty years, Debtors' current lending relationship with the Bank began in April 2010. Over the next decade, the parties signed multiple loan documents and mortgages such that Farmers State Bank held security interests in nearly all Debtors' agricultural land, cattle, farming equipment, and receivables.[9] The parties' agreed that Farmers State Bank holds over ninety percent of the claims against Debtors.[10]

By mid-2020, the parties' relationship soured. On July 7, 2020, Farmers State Bank filed a petition for damages and foreclosure in state court in Kansas, alleging a default of approximately $280,000. In that petition, Farmers State Bank alleged Debtors sold or transferred certain cattle collateral without permission of the Bank and without transmitting the

---

[7]  Doc. 255.
[8]  Doc. 1, Schedule C.
[9]  Proof of Claim No. 11.
[10]  Doc. 97 p. 2.

proceeds to the Bank.[11] Debtors dispute both the amount of the alleged prepetition default and the Bank's contentions regarding the cattle.

## B.   *Debtors' Chapter 12 Petition and Settlement*

Debtors' Chapter 12 petition was filed on February 12, 2021. Farmers State Bank filed a proof of claim, asserting a total claim of $3,432,706.60.[12] The Bank intended to pursue stay relief to continue its prepetition foreclosure action, and intended to file a nondischargeability action concerning Debtors' prepetition liquidation of a portion of its cattle operation. Debtors vehemently denied any prepetition wrongdoing. The parties negotiated for several months.

Ultimately, on September 1, 2021, Farmers State Bank filed a motion to compromise, seeking approval of the parties' agreements as to the treatment of its claims, Debtors' use of cash collateral, adequate protection payments, and the settlement of any nondischargeability claim.[13] The Court approved the settlement on September 27, 2021.[14]

The parties' negotiated terms are extensive. Debtors entered new mortgages on their real property, the parties' agreed to detailed terms

---

[11] Doc. 97 p. 1.
[12] Proof of Claim No. 11.
[13] Doc. 97.
[14] Doc. 108.

5

regarding use of cash collateral, and Farmers State Bank waived any nondischargeability claim.[15] Regarding plan terms, the parties consolidated the debt to Farmers State Bank into two claims to be paid annually beginning June 15, 2022: (1) a real estate claim totaling $2.8 million (the "real estate claim"), and (2) a machine, equipment, and cattle claim totaling approximately $795,000 (the "M&E and cattle claim").[16]

Regarding sales of real property, the parties agreed to the following provisions:

> Farmers shall consent to the sale of any real property against which it holds a mortgage lien to the extent the property is sold for not less than the applicable mortgage limit, in which case the proceeds (up to the mortgage limit, plus applicable interest, fees, and costs) shall be paid to Farmers and applied to the Real Estate Claim with such proceeds being first applied to the plan payment then due Farmers on the Real Estate Claim if the Debtors so request, but not applied to more than a single payment, with any excess proceeds being applied to principal. In the event excess proceeds are applied to principal, Farmers will then adjust the regular payments downward so as to retain the same amortized payment structure. . . . The payoff of the applicable claim will be the then remaining balance.[17]

Regarding sales of personal property, the parties agreed to the following similar terms:

> Farmers shall also consent to the sale of any personal property secured to Farmers for the fair market value of that property at

---

[15] Doc. 108 p. 2-4.

[16] *Id.* p. 5 ¶ 6.a.-6.c.

[17] *Id.* p. 7 ¶ 6.e.

the time of sale with the proceeds paid to Farmers and applied to the M&E and Cattle Claim with such proceeds being first applied to the plan payment then due Farmers on the M&E and Cattle Claim if the Debtors so request, but not applied to more than a single payment, with any excess proceeds being applied to principal. In the event excess proceeds are applied to principal, Farmers will then adjust the regular payments downward so as to retain the same amortized payment structure. The payoff of the applicable claim will be the then remaining balance.[18]

In addition to those general terms governing the sale of real and personal property, the parties also agreed to certain specific land sale options. One option—hereinafter, the ten-acre option—permits Debtors to sell to their sons a specified ten-acre tract:

> Debtors will grant an option to their sons, Randy and/or Brian, for two years from the entry of this Order, to purchase a 10-acre tract . . . The option price shall be $35,000. If the option is exercised, the net proceeds will be paid to Farmers.[19]

The parties' agreement also contained a second option, which is not at issue in the current motions. The parties agreed to additional terms regarding the proceeds from the sales specified in the two options granted by the settlement, as follows:

> If the option is exercised, the net proceeds will be paid to Farmers.
> . . .
> The proceeds from any land sales on these options shall be applied to the Real Estate Claim and Farmers will then adjust the regular payments so as to retain the same amortized payment structure. Put differently, any option sale will reduce the plan payment on

---

[18] *Id.*
[19] *Id.* p. 9 ¶ 7.

7

the Real Estate Claim. As such, the parties shall provide written notice to the Chapter 12 Trustee of any such sale and the new resulting Real Estate Claim and payment amount.[20]

The parties then noted that their order approving their agreement "shall constitute approval of the proposed sales free and clear of any liens pursuant to 11 U.S.C. § 363(f)."[21]

Finally, the parties agreed to default language. Essentially, if Debtors failed to make their annual payments on June 15, Debtors were granted thirty days to cure following receipt of a notice of default. If the payments are not then cured within thirty days, Farmers State Bank may upload an order granting *in rem* stay relief as to its collateral. The parties then agreed:

The foregoing notwithstanding, if the Debtors are not financially able to make full payments during the first two years of the plan payments to Farmers (as set forth herein), they shall make payments of not less than 80% of the required payment amount(s). The remaining 20% shall be added to the end of the loan(s). Additional interest will accrue on the unpaid portion. *This provision shall be the limit of the Debtors' ability to modify the Chapter 12 Plan as to Farmers*.[22]

The Court will refer to this final sentence as the "settlement anti-modification provision." The parties also included a provision in their agreement that the terms they agreed to would "survive plan confirmation,

---

[20] *Id.* p. 9-11 ¶ 7.
[21] *Id.* p. 11 ¶ 7.
[22] *Id.* p. 9 ¶ 6.k (emphasis added).

8

dismissal of this case, or conversion of the case."[23]

## C.  *Confirmation of Debtors' Plan and First Postconfirmation Payment*

After entry of the order approving the parties' settlement in September 2021, Debtors' plan proceeded to confirmation, and was ultimately confirmed on December 21, 2021.[24] The confirmed plan notes that the secured claim of Farmers State Bank is "subject to" the provisions of the parties' settlement, which was attached thereto.[25] The plan itself then has two terms regarding modification. First, in a paragraph titled "effect of confirmation," the plan states: "The Debtors may seek modification of the Plan after confirmation pursuant to 11 U.S.C. § 1229 upon such notice as the court shall direct."[26] Second, in a paragraph titled "modification of the plan," the plan states: "Except as otherwise provided for in this Plan, the Debtors further reserve the right to modify this Plan any time after the Confirmation Date, and before the completion of the payments to Unsecured Creditors, which modifications, if any, will comply with § 1229 of the Bankruptcy Code."[27]

Debtors' first plan payments to Farmers State Bank were due in June

---

[23] *Id.* p. 11 ¶ 9.
[24] Doc. 136 (order confirming Chapter 12 plan), Doc. 105 (Chapter 12 plan).
[25] Doc. 105 p. 4 ¶ 8.
[26] *Id.* p. 7 ¶ 14.
[27] *Id.* p. 7-8 ¶ 16.

9

2022, six months post confirmation of Debtors' plan but sixteen months post filing of Debtors' petition. Debtors timely made the June 2022 payments, although they utilized the settlement provision permitting 80% payments, paying $246,266.94 for 2022.

### D. Debtors' Second Postconfirmation Payment, Motion to Modify, and Motion to Sell Real Property

The next year, Debtors' second annual payment was due under the confirmed plan, and Debtors had the option to make another 80% payment. On June 5, 2023, ten days before their payment was due, Debtors filed the motion to modify their plan and for interpretation of their plan that is now under consideration.[28] In that motion, Debtors indicated they needed to decide "how best to sell property,"[29] needed additional time to make their annual payment, and argued their plan confirmation order permits modification under § 1229.

Both the Chapter 12 Trustee, in part, and Farmers State Bank, in total, opposed Debtors' motion. At an expedited hearing on June 13, 2023, Debtors requested a thirty-day extension to make their June 15 payment and proposed a plan to sell two tractors in order to make the payment. The Court granted Debtors a payment extension to July 11, 2023. The parties then

---

[28]  Doc. 229.
[29]  *Id.* p. 3.

entered an agreed order memorializing the extension and approving the sale of two tractors.[30] On July 4, 2023, Debtors then notified the Court in a "Supplement" to their motion to modify that they were able to generate enough funds to make an eighty percent payment for 2023.[31]

Debtors then filed their first motion to sell real property, on August 4, 2023.[32] The motion proposed a sale of the real property described in the parties' settlement as the ten-acre option, for $35,000, with a closing date of July 15, 2024. After a hearing on September 25, 2023, the Court entered an order granting Debtors' motion to sell, in part, relating to this ten-acre option. Debtors were permitted to sell the ten-acre tract to their son, Randy Huninghake, with closing to occur by November 29, 2023, and proceeds to be held by the title company for a later decision by this Court on how the proceeds should be distributed to, and applied by, Farmers State Bank.[33]

### E.    *Trial of Debtors' Motions*

At trial on the matters herein,[34] Mr. Huninghake testified regarding

---

[30] Doc. 239.

[31] Doc. 246.

[32] Doc. 255.

[33] Doc. 274.

[34] As noted above, the Court held an evidentiary hearing on the motion to sell on September 25, 2023, permitting the sale of the ten-acre tract to proceed. On November 2, 2023, an additional evidentiary hearing was held on the motion to modify and the remainder of the motion to sell. The parties have stipulated that all testimony and exhibits admitted from both hearings should be considered by the

11

the negotiations over the settlement reached with Farmers State Bank in September 2021. Mr. Huninghake acknowledged the extensive negotiations between the parties over the treatment of the Bank's claims, and although he repeatedly disavowed his "agreement" with the settlement terms negotiated, he ultimately agreed he was aware of each term and consented to each term.[35] Mr. Huninghake also addressed the new security agreements that were signed by Debtors as a condition to the parties' settlement, which contained provisions prohibiting sales of the collateral without the Bank's consent,[36] and again agreed he consented to and signed all agreements.

Regarding his requested relief, Mr. Huninghake testified that he believed his first payment should have been interest only because the payment should have been calibrated by the number of days in the calendar year: *i.e.*, because new security agreements were signed and the plan was confirmed in December 2021 and his first payments to Farmers State Bank were due in June 2022, he believed he should not have had to make a full payment. Mr. Huninghake asked that his first year's payment be recharacterized to an interest only payment for the days between December 2021 and June 2022, with the remainder that he actually paid to be "applied"

---

Court.

[35] *See* Farmers State Bank Exhibits A through I.
[36] Farmers State Bank Exhibit S.

12

to reduce his 2024 payment.[37]

Stephen Ebert of Farmers State Bank also testified. Mr. Ebert is an executive vice president at Farmers State Bank and has worked for the Bank for fifty-two years. Mr. Ebert testified about the Bank's concerns that prompted its state court foreclosure action prepetition, and the negotiations the parties undertook after Debtors filed their petition. Regarding the settlement terms reached, Mr. Ebert testified to the following:

- The four and one-half percent interest rate given on the real estate portion of the Bank's claim was at least one percent under the going rate at the time.

- The thirty-year amortization of the real estate claim was longer than typically given by the Bank.

- The five percent interest rate given on the M&E and cattle claim was lower than typically given by the Bank.

- The eight-year amortization given for the M&E and cattle claim was longer than typically given by the Bank.

- The Bank would not normally permit capital asset collateral to be liquidated and then proceeds to be applied to payments.

---

[37] Debtors are asking that their June 2022 payment be recharacterized to $79,600 (rather than the $246,266.94 actually paid) and then $147,318.45 be "applied" to reduce the June 2024 payment. Debtors' Amended Exhibit 8. Mr. Ebert testified it would be "difficult" to recharacterize the payment already made as interest only, as the Bank long ago notified the IRS of the amount of interest paid on the loan in 2022. The Chapter 12 Trustee strenuously objects to a "recharacterization" of a past payment, as it would change the percentage of his Trustee fee—already computed—and would alter his accounting and distribution system.

- The Bank did not require any liquidation in the ultimate settlement, although it felt liquidation was needed to reduce debt and get a working plan.

- The Bank typically requires a plan payment within the first year postpetition, and in this settlement, the first plan payment was not due until sixteen months after the bankruptcy petition was filed.

- The provision permitting eighty percent payments the first two years was unusual; Mr. Ebert testified he had never seen a similar provision in his more than fifty years with the Bank.

- The Bank agreed not to file a nondischargeability action, despite being prepared to file that action in absence of the settlement agreement.

- Regarding the options given in the settlement agreement, Mr. Ebert testified Farmers State Bank would not typically permit subdivision of its collateral in the manner permitted, because in the Bank's view such subdivision would detract from the value of the balance of the whole piece of real property.

Finally, Mr. Ebert testified that the anti-modification provision in the parties' settlement was important to the Bank; that the provision was what induced the Bank to sign the agreement. Mr. Ebert testified the Bank was agreeable to only one change proposed by Debtors: changing the annual payment date from June 15 to July 15.

Regarding the motion to sell the ten-acre tract, the parties stipulated that the ten-acre tract has a fair market value of $35,000 ($3500 an acre), and the remaining 150 acres in the quarter tract of land have a value of $690,000 ($4600 an acre). Mr. Huninghake testified the mortgage limit on the

property was $514,000, and testified he believed an adjoining similar property had a value of about $680,000. Mr. Huninghake testified he farms with his sons, and the ten-tract is where a large portion of the farming operations are centered, along with the location of the farming operation's silo. Mr. Huninghake testified he wanted to sell the ten-acre tract for two reasons: (1) because his children wanted to own the tract to make improvements on it and (2) so that he could make money to go toward his next plan payment. Mr. Ebert testified that although the value today of the property at issue is about $690,000, the Bank believed the application of the proceeds from the sale to a plan payment rather than principal reduction would dilute the Bank's equity position. Mr. Ebert also testified the mortgages covering that particular tract of land also cover other tracts (Debtors signed new security agreements and mortgages as part of the settlement agreement, and the overall total mortgage amount given on the real estate claim is $2,849,000), and he also pointed out that the mortgage permits fees and costs, which are beyond the mortgage cap.[38]

Regarding the feasibility of Debtors' Chapter 12 plan, Mr. Huninghake testified he believes he is current on plan payments. The Trustee's exhibits

---

[38]  Farmers State Bank Exhibits S and T. The parties failed at trial to establish which parcels of real estate are covered by the mortgages given, or what the mortgage lien limits are on each piece of real property.

Case 21-40090    Doc# 299    Filed 12/15/23    Page 15 of 50

show a relatively small delinquency of $12,487.63.[39] Mr. Huninghake testified he has had difficulty making payments because of an increase of expenses and a loss on his 2022 corn crop that covered a significant portion of his acreage. Mr. Huninghake testified that his plan going forward is that if his farm income is not high enough to make plan payments, he will sell parcels of his land—ten or twenty acres at a time—and use the proceeds from those sales to make his plan payments. Mr. Huninghake testified he is also pursuing a cattle loan through the Farm Service Agency and hoped to produce an additional $70,000 a year through cattle sales but did not yet have the loan. Mr. Huninghake agreed Debtors could not pay current market interest rates for either his real or personal property loans. Mr. Ebert testified to his belief that Debtors need to sell land and reduce their debt load, pointing to Debtors' debt to net worth ratio. For example, for the two years prepetition, Debtors' loans required payments of about $468,000—about $234,000 a year—but in those two years Debtors paid only about $390,000. Post petition, as noted above, Debtors' payments to Farmers State Bank (utilizing the 80% option) have been $246,266.94 each year. The required payment to Farmers State Bank for 2024 will be $283,648.07.

---

[39] Trustee Exhibit T1.

16

## II.   Conclusions of Law

Both a motion to modify a Chapter 12 plan and a motion to sell are core contested matters under 28 U.S.C. § 157(b)(2)(A), (L), and (N), over which this Court may exercise subject matter jurisdiction.[40]

### A.   Matters at Issue and Burden of Proof

The parties filed a pretrial order and identified for trial the following requests by Debtors:[41]

> (1) move Debtors' annual payment from June 15 to July 15, and recalculate the 2022 payment already made to interest only from December 2021 to June 2022, with application of excess to reduce the amount owed for the 2024 annual payment;

> (2) order that Farmers State Bank has consented to the sale of personal property secured to the Bank, at any time for fair market value, with application of the proceeds of the sale to that year's plan payment on the M&E and cattle claim, with excess to principal reduction;

> (3) order that Farmers State Bank has consented to the sale of real property secured to the Bank, at any time, without appraisal, as long as the sale is for not less than the mortgage limit applicable to that property, with application of the proceeds to the plan

---

[40]   This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[41]   Doc. 284. A pretrial order supersedes prior pleadings and governs matters for trial. *E.g.*, *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2022) (noting the pretrial order is "the controlling document for trial" (internal quotations omitted)).

17

payment due that year on the real estate claim, with excess to principal reduction;

(4) order that Debtors may sell real or personal property at any time under § 363, with no limits as to selling portions of real property, if the sale is for fair market value and Farmers State Bank remains adequately secured, and Debtors are permitted to apply the proceeds from the sale to plan payments; and

(5) order that the net proceeds from the sale of the ten-acre tract should be applied to the 2024 plan payment, rather than to reduction of the principal of the real estate claim.

Debtors have the burden of proof on all the contested matters herein.[42]

The Chapter 12 Trustee opposes only the first modification sought by Debtors, and argues the proposed modification is not permitted by § 1229(a) and would cause administrative difficulties, as well as changes to the computation of the Trustee's fees. Because of the rulings made herein, the Court need not further address the Trustee's arguments. Farmers State Bank opposed relief to Debtors in all regards. The Bank argues the terms of the parties' settlement are contained within a binding, final Court order, and are not modifiable. The Bank also argues that even if Debtors' plan could be modified in the ways they propose, the terms proposed are unreasonable and do not meet the requirements of § 1229, § 1225, or § 363.

---

[42] *See, e.g.*, *In re Roesner*, 153 B.R. 328, 336 (Bankr. D. Kan. 1993) (party requesting modification of a confirmed Chapter 12 plan "has the burden of proof to show that modification is proper"); 11 U.S.C. § 363(p) (assigning burden of proof on the issue of adequate protection to the trustee of property being sold under § 363).

18

**B.  Analysis**

*1.  Change to Payment Date and Recharacterization of 2022 Payment with Related Reduction of 2024 Payment*

*i.  Positions of the Parties and Governing Terms of Confirmed Plan*

Debtors first ask for a change to both their payment date and to their 2024 payment amount. Specifically, Debtors ask that their annual payments to Farmers State Bank be moved from June 15 to July 15 under § 1229(a)(2). Debtors then ask that the payments already made in 2022 be reduced, with the resulting recharacterized overpayment then applied to reduce the amount due in 2024, under § 1229(a)(1). Debtors argue they may make these modifications under the paragraph in their plan titled "effect of confirmation," which states they "may seek modification of the Plan after confirmation pursuant to 11 U.S.C. § 1229 upon such notice as the court shall direct."[43]

As laid out above, the confirmed plan requires payments on both claims of Farmers State Bank on June 15 each year.[44] If any default is not cured within thirty days, then "Farmers shall immediately be permitted to upload an order granting in rem stay relief as to all of its collateral."[45] The plan

---

[43]  Doc. 105 p. 7 ¶ 14.
[44]  Doc. 108 p. 5 ¶ 6.a.
[45]  *Id.* p. 9 ¶ 6.k.

19

notes that an estimated annual payment amount was provided for each claim, with an actual payment amount to be provided within fifteen business days following plan confirmation.[46] The evidence at trial indicates the payment amounts were timely provided, that the totals due on June 15 each year as provided by the Bank—including the first year—would be of principal *and* interest, and that there was no contemporaneous misunderstanding as to those facts.

Obviously, the parties' settlement agreement, incorporated into the confirmed plan, discussed reduced payment options for the first two years, but not in the way Debtors now assert. The agreement states that if Debtors "are not financially able to make full payments during the first two years of the plan . . . [i.e., the 2022 and 2023 payments], they shall make payments of not less than 80% of the required payment amount(s). The remaining 20% shall be added to the end of the loan(s). Additional interest will accrue on the unpaid portion."[47] Farmers State Bank testified it was willing to agree to this reduced payment structure only because of other concessions being made in the compromise and because of the agreement the plan would not be modified in any other way.

---

[46] *Id.* p. 6 ¶ 6.d.
[47] *Id.* p. 9 ¶ 6.k.

Case 21-40090    Doc# 299    Filed 12/15/23    Page 20 of 50

*ii.    Section 1229(a) and the Bank's Acquiescence to Modification to the Time of Payment*

Debtors' Chapter 12 plan was confirmed on December 21, 2021. Under § 1227(a), the provisions of Debtors' confirmed plan "bind the debtor [and] each creditor . . . , whether or not the claim of [each] is provided for by the plan, and whether or not such creditor . . . has objected to, has accepted, or has rejected the plan." In other words, the confirmed plan is "a declaratory order" that binds both creditors and debtors.[48]

That said, § 1229 permits modification of a plan after confirmation. Section 1229 states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, on request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

> (2) extend or reduce the time for such payments;
> . . .

(b)
> (1) Sections 1222(a), 1222(b), and 1223(c) of this title and the requirements of section 1225(a) of this title apply to any modification under subsection (a) of this section.

> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

---

[48] *In re Cook*, 966 F.2d 539, 543 (10th Cir. 1992). *See also In re Bange*, No. 08-40156, 2012 WL 2887227, at *7 (Bankr. D. Kan. July 16, 2012) (after amended plan is confirmed, it binds the debtor as well as creditors to its terms).

21

Even assuming Debtors could rescind or modify their settlement agreement with Farmers State Bank, addressed more fully below, § 1229 contains several hurdles to modification.[49]

The first couple of hurdles are easily met. Debtors have a confirmed plan and have not yet completed payments under their plan, satisfying the first clause of § 1229(a). Debtors are requesting modification under subsection (a)(1) (seeking to decrease the *amount* of payments provided for by their plan to Farmers State Bank) and subsection (a)(2) (seeking to extend the *time* for payments to the Bank).[50]

---

[49] Many bankruptcy courts require a Chapter 12 debtor to show a change of circumstances prior to assessing a proposed modification under § 1229, reasoning "[p]ost-confirmation modification is only warranted when an unanticipated change in circumstances affects the implementation of the plan as confirmed." *In re Grogg Farms, Inc.*, 91 B.R. 482, 485 (Bankr. N.D. Ind. 1988). Other courts disagree, noting "[t]here is nothing in the statute itself suggesting that the debtor bears a burden of demonstrating a change in circumstances in order to propose a modification." *In re Dittmer*, 82 B.R. 1019, 1021-22 (Bankr. D.N.D. 1988). The Tenth Circuit has not addressed the issue, and appellate courts are divided. *See In re Swackhammer*, 650 B.R. 914, 920 (8th Cir. BAP 2023) (noting cases on each side).

The Court need not decide the issue, in light of other rulings herein, but for purposes of this case, concludes it is the confirmation requirements required by § 1229(b)(1) that require a discussion of a debtor's changed circumstances (*e.g.*, feasibility under § 1225(a)(6) or good faith under § 1225(a)(3)), and generally, a debtor's "special, unusual or unanticipated circumstances or the lack thereof, in and of itself, cannot control confirmation of a modified plan." *In re LaRosa Greenhouse, LLP*, No. 15-30672-ABA, 2017 WL 3835168, at *3 (Bankr. D.N.J. Aug. 31, 2017).

[50] Debtors do not appear to be arguing that the settlement anti-modification provision itself should be "modified" under § 1229; rather they argue that provision does not prevent modification.

First, regarding the proposed modification to the payment time, from June 15 to July 15 each year, the Farmers State Bank representative testified that the Bank found that change acceptable. As a result, the Court grants that portion of Debtors' motion seeking a modification as to payment time, from June 15 to July 15 each year.

### iii. Section 1229(b)(1) and the Application of § 1225(a) Confirmation Standards to the Proposed Modification to Payment Amount

Regarding the next proposed modification, to payment amount under § 1229(a)(1), the biggest hurdle Debtors must overcome is found in subsection (b)(1) of § 1229, which requires that "any modification" must comply with § 1222(a) (mandatory plan provisions), § 1222(b) (permissible plan provisions), § 1223(c) (presumption regarding a holder of a secured claim and accepting or rejecting a plan, as applicable therein), and § 1225(a) (confirmation standards).[51] As a result of all these cross-references, § 1229(b)(1) is a heavy burden to meet in this case.

Farmers State Bank argues Debtors fail to carry their burden to meet the hurdle of § 1229(b)(1) in two respects: (1) the proposed modification to the

---

[51] See In re Couchman, 477 B.R. 807, 810 (Bankr. D. Kan. 2012) ("If the modified plan had been presented as the original plan, could it have been confirmed? If the answer is yes, the modification should be granted. The Court must determine whether the modified plan meets the plan contents and confirmation requirements of §§ 1222 and 1225.").

23

payment amount leads to a plan that does not enable Debtors to "make all payments under the plan and to comply with the plan" under § 1225(a)(6) (feasibility) and (2) the proposed modification is not a commercially reasonable treatment of the Bank's claims, and fails to comply with § 1225(a)(5)(B) (treatment of secured claims).

a. *Lack of Feasibility, § 1225(a)(6)*

First, regarding feasibility, Debtors' proposed modification is to reduce the 2022 payment to what would have been due if only paying interest (and only the amount of interest that would have been due between plan confirmation and the first due date), and then to apply the amount that was actually paid over that amount to the 2024 payment. Debtors contend they will be able to make the remainder of their 2024 payment, and their payments going forward, because Debtors will sell parcels of land to make payments and because Mr. Huninghake has applied for a cattle loan that he hopes will produce an additional $70,000 per year in income.

Fact finding on feasibility is difficult, and there are never clear answers. Of course, the Court hopes Debtors' projections work exactly as they desire, and the Court endeavors to give Debtors the benefit of the doubt,[52] but

---

[52] *See, e.g.*, *In re Woods*, 465 B.R. 196, 209 (10th Cir. BAP 2012) (calling a Chapter 12 plan's feasibility a "fact-sensitive question" and noting "[q]uestions about plan feasibility are resolved by giving the debtor the benefit of the doubt

the Court ultimately concludes there is no "reasonable assurance" Debtors will be able to make payments in the amounts required to service the debt owed to Farmers State Bank, either in 2024, or going forward beyond that date.[53]

The evidence at trial shows Debtors are over extended. In the two years prior to filing, Debtors made payments to Farmers State Bank averaging about $195,000 a year.[54] Debtors first postpetition plan payment was due sixteen months postpetition (in June 2022) and required a payment (utilizing the 80% option) of $246,266.94. By all accounts, Debtors were able to pay that amount, although again, they needed sixteen months to produce that income. To make the 2023 payment due twelve months later, Debtors had to obtain an extension and sell two tractors. Assuming the Court grants the "recharacterization" and reduced payment in 2024, how can Debtors generate

---

when the projections warrant it"), *vacated on other grounds by In re Woods*, 743 F.3d 689 (10th Cir. 2014).

[53] *See In re Ames*, 973 F.2d 849, 851 (10th Cir. 1992) ("Although debtors are not required to guarantee the success of the plan, they must provide reasonable assurance that the plan can be effectuated. A plan's income projections must be based on concrete evidence and must not be speculative or conjectural." (internal citations and quotations omitted)); *see also In re Graves Farms*, No. 18-10893, 2019 WL 1422891, at *6 (Bankr. D. Kan. Mar. 28, 2019) ("The feasibility process injects an element of pragmatism by prohibiting confirmation of overly optimistic plans clearly destined to fail and by not belaboring the inevitable demise of a hopelessly insolvent debtor." (internal quotations omitted)).

[54] Debtors made payments to the Bank in the two years' prepetition totaling $390,000.

the cash to make annual plan payments going forward? Debtors' plan payment in 2024 and beyond will be $283,648.07. Debtors have not been able to pay Farmers State Bank anywhere close to that amount in the last four years.[55]

Further, there is absolutely no evidence to support Mr. Huninghake's "hope" that he could earn an additional $70,000 in cattle sales from an FSA loan. The Court was not told where Debtors are at in the process of applying for the loan, what the repayment terms would be, or the basis for estimating an additional $70,000 in income. There were no "realistic and objective" facts given to the Court,[56] and the time to do so has passed.

Finally, regarding feasibility, Debtors rely on an ability to parcel off portions of their real property and sell that real property when they are short on funds to make their yearly plan payments. But even assuming such a strategy is permitted by the Code and the parties' settlement agreement and confirmed plan, Debtors again provided no concrete basis to evaluate such a

---

[55] *See In re Graves Farms*, 2019 WL 1422891, at *7 (cash flow projections should be examined in light of a debtor's "historical performance and experience as supplemented by current market data"); *see also In re Clark*, 288 B.R. 237, 249 (Bankr. D. Kan. 2003) ("On its face, the continued crop farming alternative is marginally feasible but for the fact of debtor's historical poor performance.").

[56] *E.g.*, *In re Clark*, 288 B.R. at 248 ("The court must be persuaded that it is probable that a plan will be able to cash flow based upon realistic and objective facts (as opposed to visionary or overly optimistic projections)." (internal quotations omitted)).

26

plan. If Debtors sell off a portion of their land, that will presumably impact the acreage available for crop production or for cattle. Reducing their real property will presumably reduce their income production. Selling real property may help in the short term, but Debtors would be reducing their income production ability to make plan payments, without significantly reducing their principal obligations, resulting in less income to support the same debt. Yet again, these are all suppositions by the Court, because Debtors presented no evidence with hard numbers. Under § 1229(b)(1), Debtors had the burden to put on evidence showing how their plan, as modified, will meet the confirmation requirements of § 1225; Debtors did not do so as to feasibility.

> b. *Secured Claims Treatment Insufficient, § 1225(a)(5)(B)*

Debtors must also show that their proposed modified plan complies with § 1225(a)(5), which governs the treatment of secured claims. That subsection states:

> (5) with respect to each allowed secured claim provided for by the plan--
> > (A) the holder of such claim has accepted the plan;
> >
> > (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> > > (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed

27

amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

Debtors have not met either of the first or third alternatives for the treatment of the secured claims of Farmers State Bank under § 1225(a)(5), as the Bank does not accept the reduced and recharacterized payment structure proposed by Debtors and Debtors are not proposing to surrender any real property.

Because they cannot satisfy § 1225(a)(5)(A) or (C), Debtors must therefore satisfy § 1225(a)(5)(B). Under § 1225(a)(5)(B), Farmers State Bank must receive payments under the plan in an amount no less than the amount of its secured claims.[57] Debtors' modification is to reduce the overall amount of payments to Farmers State Bank (by reducing the amount due in 2022 and applying that amount to the 2024 payment). Debtors wish to reduce the payment amount, without altering any other terms of their relationship with the Bank—*i.e.*, they do not propose a higher interest rate to accommodate those reduced payments, do not offer additional security to the Bank, and do

---

[57] *In re Hardzog*, 901 F.2d 858, 859 (10th Cir. 1990) ("the holder of an allowed claim must receive property under the plan which has a value of no less than the amount of its allowed claim"); *In re Graves Farms*, 2019 WL 1422891, at *5 ("Chapter 12 requires that each secured creditor's claims be paid the value of the creditor's collateral as of the plan's effective date.").

not propose an altered (shorter) repayment period.

To determine compliance with § 1225(a)(5)(B), the Court must determine the present value of the cash flow to be paid Farmers State Bank on its secured claims.[58] A Chapter 12 debtor must pay its secured creditor "no less than the full amount of its allowed claim plus interest."[59] The appropriate interest rate for cram down under § 1225(a)(5)(B) is the national prime rate, adjusted for factors such as "'the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.'"[60]

The testimony here indicates Debtors' proposed modification does not

---

[58]  *In re Hardzog*, 901 F.2d at 859 ("[T]he Bankruptcy Court must determine the present value of a series of future cash flows; otherwise it cannot determine whether Bank will receive less than the allowed amount of the claim. This necessarily dictates that the Bankruptcy Court must arrive at a discount factor or interest rate. Once the unpaid principal, due date, payment periods, and payment amounts are determined, the problem still cannot be solved until the interest rate or discount factor is determined. Only with all of these figures known does the solution then become one of mathematical computation."); *In re Graves Farms*, 2019 WL 1422891, at *5 ("Absent the creditor's acceptance of the plan, that payment must come either as a stream of payments that has a present value equal to the collateral's value, surrender of the collateral, or its sale.").

[59]  *In re Zerr*, 167 B.R. 953, 957 (Bankr. D. Kan. 1994).

[60]  *In re NRS Props., LLC*, 634 B.R. 395, 424 (Bankr. D. Colo. 2021) (quoting *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004)) (analyzing appropriateness of applying *Till* rate to Chapter 12 cram down under § 1225(a)(5)(B)); *In re Woods*, 465 B.R. 196, 206 (10th Cir. BAP 2012), *vacated on other grounds*, 743 F.3d 689 (10th Cir. 2014) (applying *Till* in Chapter 12 case); *In re Graves Farms*, 2019 WL 1422891 at *6 (noting no party "offered evidence concerning current market rates, its cost of money, or other *Till* risk adjustment factors to the prime rate" in assessing cram down under § 1225(a)(5)).

comply with § 1225(a)(5)(B). Farmers State Bank presented testimony from Mr. Ebert, a long-time lender on agriculture loans like those at issue. Mr. Ebert testified that the market rate for agricultural real estate loans was in the eight percent range for borrowers with good credit, and the market rate for equipment loans on used equipment would be eight to nine percent, with the rate going up on longer amortizations.

Debtors did not show how they would or could make payments to Farmers State Bank to pay the value of the Bank's claims under § 1225(a)(5)(B).[61] Mr. Huninghake agreed Debtors could not pay current market rates for either his real or personal property loans. The reason Debtors received interest rates within their confirmed plan at the (reduced, below-market) rates they did is because of the other concessions made within their global settlement. Now they wish to alter the payment amount but keep those more favorable rates. Section 1225(a)(5) would allow that if Farmers State Bank consented, under subsection (a)(5)(A), but the Bank does not consent.

---

[61] *E.g.*, *In re Larson*, 122 B.R. 417, 421 (Bankr. D. Idaho 1991) ("[A]ssuming the payment terms of the original plan satisfied Section 1225(a)(5)(B)(ii), the Court cannot conclude without more that by deleting one annual payment to secured creditors the 'present value' of the payment stream remains intact. Rather, a change in the time over which payments are made to a creditor would generally also require a change in the interest rate payable to that creditor to preserve the present value of the payments.").

Again, Debtors had the burden under § 1229(b)(1) to show that their proposed modified plan would comply with all confirmation requirements of § 1225. Debtors did not do so as to treatment of the Bank's secured claims under § 1229(a)(5).

    *iv.    Settlement Agreement and Modification*

Even if Debtors could carry their burden under § 1229, Farmers State Bank also contends the settlement anti-modification provision prohibits the modifications proposed. This goes to the thrust of the dispute herein: can a Chapter 12 debtor modify an agreed settlement, partially performed, because § 1229 permits modification of confirmed Chapter 12 plans and the settlement was incorporated into the plan?

    *a.    Confirmed Plan's Terms are not Ambiguous and Do Not Permit Modification to the Payment Terms of Farmers State Bank's Claims*

In this case, the plan confirmation order has two terms addressing modification, but Debtors rely on only one. In the paragraph titled "effect of confirmation," the plan states "Debtors may seek modification of the Plan after confirmation pursuant to 11 U.S.C. § 1229 upon such notice as the court shall direct."[62] It is this provision Debtors rely on for the proposition that they may seek a modification under § 1229. Debtors entirely ignore the

---

[62]  Doc. 108 ¶ 14 p. 7.

second provision, in a paragraph titled "modification of the plan," which states: "*Except as otherwise provided for in this Plan*, the Debtors further reserve the right to modify this Plan any time after the Confirmation Date, and before the completion of the payments to Unsecured Creditors, which modifications, if any, will comply with § 1229 of the Bankruptcy Code."[63]

Regarding Farmers State Bank specifically, the plan confirmation order dictates that the secured claims of Farmers State Bank are governed by the settlement agreement between the parties, and a copy is attached thereto.[64] As noted, the settlement terms then contain the settlement anti-modification provision, which limits Debtors ability to modify their Chapter 12 plan as to the claims of Farmers State Bank.[65] The Court concludes the parties' settlement anti-modification provision prohibits modification to the payment amounts. Importantly, the settlement anti-modification provision directly follows the settlement's payment terms, and directly follows the only provisions in the settlement regarding payment default.

As noted above, § 1227(a) makes the provisions of the confirmed plan binding, and the confirmed plan bars the assertion of any rights that are inconsistent with the provisions of the confirmed plan. The confirmed plan in

---

[63] *Id.* p. 7-8 (emphasis added).
[64] Doc. 105 p. 4.
[65] *Id.* p. 9 (emphasis added).

32

this case incorporates the parties' settlement agreement. There is a general provision in the plan that states the plan could be modified under § 1229, but then there is a very specific anti-modification provision in the parties' settlement that specifically prohibits any future attempt to modify the payment terms on Farmers' State Bank's claim. In addition, the "modification of the plan" paragraph in the confirmation order notes that the modification term of the confirmation order applies "except as otherwise provided for" in the plan. When the confirmed plan and settlement agreement are read as a whole, the Court is convinced the parties' intended to alter the plan's payment terms for the Bank's secured claims only as permitted in the specific settlement agreement.[66]

Even if the Court found the confirmed plan to be ambiguous because of the "effect of confirmation" plan term versus the "modification of the plan" paragraph and the settlement term, general rules of contract construction dictate that the specific terms control over the general term.[67] Even without

---

[66] This case is different from the situation Judge Nugent encountered in *In re Couchman*, 477 B.R. 807 (Bankr. D. Kan. 2012). In *Couchman*, the creditor argued the debtor could not modify his plan under § 1229 because of a drop-dead provision in a stay relief order. As Judge Nugent noted, "the stay relief order containing the drop-dead provision is final and remains enforceable," but the modification sought by the debtor did not implicate that final drop-dead order and so thus was judged on its merits under § 1229. *Id.* at 809.

[67] Restatement (Second) of Contracts § 203 ("In the interpretation of a promise or agreement or a term thereof, . . . specific terms and exact terms are

this rule of construction, the plan is not ambiguous and the parties' intent is apparent from a plain reading that the specific, anti-modification term applies to limit Debtors' ability to modify the payment terms on the claims of Farmers State Bank.[68]

> **b.** *Modification of Debtors' Settlement Agreement Must be Done through State Law or Federal Rules of Civil Procedure 59 or 60, not § 1229*

The parties' settlement is a contract, governed by state law.[69] If Debtors wish to rescind their settlement agreement, they must do so under state law, not the Bankruptcy Code.[70] Debtors have not asked for rescission, so this Court will not address that remedy further.

As repeatedly discussed, the parties' settlement agreement was given

---

given greater weight than general language. If the general and specific provisions are inconsistent, the specific provision controls.").

[68] Debtors argue a party cannot waive a statutory right within a settlement agreement, citing cases concluding certain rights under the Code cannot be waived. Debtors' Trial Brief, Doc. 294 p. 2-3. But specification as to the treatment of a debtor's claims is integral in bankruptcy settlements, which makes the modification provision of § 1229 different than the rights found to be non-waivable in the cases cited by Debtors.

[69] *In re Hall*, No. 06-40872, 2010 WL 1730684, at *6 (Bankr. D. Kan. Apr. 28, 2010) ("State law is controlling on the question of whether a debtor may unilaterally rescind a settlement agreement."). The settlement agreement does not indicate the controlling state law, but all parties reside in Kansas and the property governed therein lies in Kansas.

[70] Presuming Kansas law applies, "Kansas law favors compromise and settlement of disputes and, generally, in the absence of bad faith or fraud, neither party is permitted to repudiate a settlement agreement. Such an agreement may also be rescinded if tainted by mutual mistake." *Id.* (internal quotations omitted).

34

this Court's approval under Federal Rule of Bankruptcy Procedure 9019.[71] As

such, Debtors' bankruptcy estate was bound to the terms of the bargain

struck.[72] Modifications to a final court order approving a settlement

agreement are properly made through Federal Rules of Civil Procedure 59 or

60.[73] Under Rule 59, a final court judgment may be altered or amended and

under Rule 60(b), a party may have relief from a final judgment or order

based on things like mistake, fraud, or other reasons justifying relief.[74] Even

---

[71] Rule 9019 states that on motion, and after notice and a hearing, "the court may approve a compromise or settlement."

[72] *In re Hall*, 2010 WL 1730684, at *8 ("The purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a trustee or debtor-in possession that affects the bankruptcy estate." (internal quotations omitted)).

[73] *See Saggiani v. Strong*, 718 F. App'x 706 (10th Cir. 2018) (considering appeal of a Rule 60(b) motion seeking relief from bankruptcy court's order approving a settlement). These Rules are applicable in bankruptcy, although altered somewhat, via Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively.

[74] Rule 60(b) states: "Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief."

if the time for seeking relief under these Rules has not expired,[75] Debtors

again have not presented any argument under these Rules.

     *v.*     *Summary as to Debtors' Requested Modifications as to Payment Date and Recharacterization of 2022 Payment with Related Reduction of 2024 Payment*

To summarize the above, the Court grants Debtors' requested relief as

to the date of required annual payments, moving the due date for payments

to July 15 each year. The Court denies Debtors' request to reduce the amount

of payment previously due in 2022, with the resulting recharacterized

overpayment then applied to reduce the amount due in 2024. Debtors did not

carry their burden to show the modified plan was feasible or that the

proposed treatment of Farmers State Bank's claims was sufficient under §

1225(a)(5)(B), thereby failing to carry their burden to show modification was

appropriate under § 1229. Debtors also failed to show the requested

modification was permitted by their settlement agreement and did not show

modification of the settlement agreement was appropriate under either state

law or governing Federal Rules.

---

[75] Relief under Rule 59, as modified by Federal Rule of Bankruptcy Procedure 9023, must be sought within fourteen "days after entry of judgment." Relief under Rule 60(b) "must be made within a reasonable time," and for relief based on mistake or excusable neglect (Rule 60(b)(1)), newly discovered evidence (Rule 60(b)(2)), and fraud (Rule 60(b)(3)), relief must be sought "no more than a year after entry of the judgment or order."

## 2. Debtors' Sale of Personal Property for Fair Market Value, with Proceeds to Plan Payment

Debtors next seek an interpretation of their plan that permits them to sell any personal property secured to the Bank at any time for fair market value and apply the proceeds of the sale to that year's plan payment on Farmers State Bank's M&E and cattle claim, with excess, if any, to principal reduction.

As noted herein, the parties' settlement, the terms of which are incorporated into the confirmed plan, contain detailed provisions regarding the sale of personal property. Per that settlement, Farmers State Bank:

> shall consent to the sale of any personal property secured to Farmers for the fair market value of that property at the time of sale with the proceeds paid to Farmers and applied to the M&E and Cattle Claim with such proceeds being first applied to the plan payment then due Farmers on the M&E and Cattle Claim if the Debtors so request, but not applied to more than a single payment, with any excess proceeds being applied to principal. In the event excess proceeds are applied to principal, Farmers will then adjust the regular payments downward so as to retain the same amortized payment structure. The payoff of the applicable claim will be the then remaining balance.[76]

The parties' agreed language therefore permits sales of personal property as long as the proposed sales are for fair market value at the time of sale. If Debtors' so request, proceeds from such sales may first be applied to the plan

---

[76] Doc. 108 p. 7 ¶ 6.e.

37

payment "then due" on the M&E and cattle claim. If there is excess above that plan payment, then it should be applied to the principal balance of the M&E and cattle claim. The entirety of these provisions was incorporated into the confirmed plan; that plan is final and binding on all parties.

The Court is not sure of the actual dispute between Debtors and the Bank on personal property sales. It appears to the Court that the settlement agreement provides what Debtors are seeking. Is the problem the request to apply sale proceeds to "future plan payments?" If Debtors are seeking Court authority to sell personal property secured to Farmers State Bank any time during the year (for example, sell a $20,000 tractor in August) and then "prepay" that money toward the next M&E and cattle payment to the Bank (applying the proceeds of the August $20,000 sale to the next calendar year's now-July payment on the M&E and cattle claim), then the Court concludes that is a reasonable interpretation of the confirmed plan. The July payment is the next-due plan payment, and a reasonable interpretation of the "then due" language. But if Debtors are seeking Court authority to sell personal property secured to Farmers State Bank and use the sale proceeds toward multiple years of payments, or to payments on the real estate claim, then neither of those interpretations of the confirmed plan can be supported. Proceeds of sales of personal property secured to the Bank must be applied to

the plan payment of the M&E and cattle claim (if Debtors so choose) for the next plan payment due after the sale is closed, with any excess going only toward reduction of principal of that M&E and cattle claim.

Perhaps the dispute is over the Bank's consent, and fair market value? The confirmed plan states the Bank "shall consent" to sales for fair market value. The plan does not define the term "fair market value," but there is no ambiguity to that phrase. If Debtors propose a sale, and the Bank does not agree to Debtors' claim of value, then the parties should bring the dispute to the Court for decision.

Ultimately, however, there is no pending sale and no proposed sale. There is no contested matter for the Court to rule on for this portion of Debtors' pending motion to modify and the Court will not provide an advisory opinion.[77]

---

[77] *Columbian Fin. Corp. v. BancInsure Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) ("Article III has long been interpreted as forbidding federal courts from rendering advisory opinions. . . It is not the role of federal courts to resolve abstract issues of law. Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties."); *King Res. Stockholders Protective Comm. v. Baer (In re King Resources Co.)*, 651 F.2d 1326, 1331 (10th Cir. 1980) ("It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give advisory opinions on moot questions or abstract propositions."); *see also New Mexico Env't Dep't v. Foulston (In re L.F. Jennings Oil Co.)*, 4 F.3d 887, 889 (10th Cir. 1993) (refusing to provide "future guidance" regarding bankruptcy court sales).

39

### 3. Debtors' Sale of Real Property for the Mortgage Limit, with Proceeds to Plan Payment

Third, Debtors seek an interpretation of their plan that permits them to sell real property secured to Farmers State Bank at any time, without appraisal, as long as the sale is for not less than the mortgage limit applicable to that property. Debtors then seek to apply the proceeds to the plan payment due that year on the real estate claim, with excess, if any, to principal reduction.

Again, the parties' settlement, and thus the confirmed plan, addresses this issue. Per that settlement, Farmers State Bank:

> shall consent to the sale of any real property against which it holds a mortgage lien to the extent the property is sold for not less than the applicable mortgage limit, in which case the proceeds (up to the mortgage limit, plus applicable interest, fees, and costs) shall be paid to Farmers and applied to the Real Estate Claim with such proceeds being first applied to the plan payment then due Farmers on the Real Estate Claim if the Debtors so request, but not applied to more than a single payment, with any excess proceeds being applied to principal. In the event excess proceeds are applied to principal, Farmers will then adjust the regular payments downward so as to retain the same amortized payment structure.[78]

As directly above, there is no ambiguity. The parties agreed that Debtors may sell real property, at any time, as long as the sale price is "not less than the applicable mortgage limit" on the particular piece of real property. Proceeds

---

[78] Doc. 108 p. 7 ¶ 6.e.

Case 21-40090    Doc# 299    Filed 12/15/23    Page 40 of 50

from the sale—up to that mortgage limit, plus applicable interest, fees, and costs—may be applied to the next due plan payment on the real estate claim, with excess, if any, applied to principal reduction of the real estate claim.

Regarding application of proceeds, Debtors argue in the pretrial order that they should be able to sell real property in multiple years and apply proceeds to plan payments (if they wish), in not just that year, but in subsequent years. So again, perhaps this dispute is over timing? The settlement states that "the proceeds" of these sales "shall be paid to Farmers," they will be "applied to the Real Estate Claim," and will be "first applied to the plan payment then due Farmers on the Real Estate Claim . . . but not applied to more than a single payment, with any excess proceeds being applied to principal."[79] The Court interprets this language to mean, assuming other requirements are satisfied, proceeds of sales of real property may be applied to the plan payment on the real estate claim next due, with excess toward reduction of principal. For example, again, assuming other requirements are met, Debtors could sell real property in December 2023, then "prepay" the proceeds of the sale toward the now-July 2024 plan payment on the real estate claim, with excess applied to reduction of the real estate claim. Debtors could go through the same process for a separate piece

---

[79] *Id.*

of real property, in the same year or in a subsequent year, with the proceeds of any one sale going toward not more than one plan payment, and then reduction of principal. If a sale of real property is for at least the mortgage limit plus interest, fees, and costs, then the proceeds of that sale can be used for one plan payment.

Again, however, there is no pending sale and no proposed sale. There is no contested matter for the Court to rule on for this portion of Debtors' pending motion to modify.[80]

### 4.    Debtors' Sale of Personal or Real Property under § 363, with Proceeds to Plan Payments

Next, Debtors seek an order interpreting their settlement to permit them to sell real or personal property at any time under § 363, with no limits as to selling portions of real property, if the sale is for fair market value and Farmers State Bank remains adequately secured. Debtors then seek permission to apply the proceeds from such sales to plan payments, rather than principal reduction. Essentially, Debtors argue the sales provided for in the settlement agreement reflect the sales Farmers State Bank consented to at the time the agreement was entered, and they can also apply under the Code to sell property under § 363. Debtors also note the expanded sale

---

[80] *See* cases cited *supra* note 79.

42

powers granted by § 1206, which permits sales of farmland under § 363(b) and (c).

As discussed in great detail herein, the settlement agreement contains detailed provisions concerning the "general" sales of real and personal property, and then two additional sales options that contain different provisions. Regarding the general sales of real property, the specific language used does give partial credence to Debtors' theory. These provisions begin by stating Farmers State Bank "shall consent to the sale" of property, as then further specified.[81] The language used at the end of the option sales is the only mention in the settlement agreement of § 363, as it states the parties Order setting out the terms regarding the options "shall constitute approval of the proposed sales free and clear of any liens pursuant to 11 U.S.C. § 363(f)."[82]

The Court agrees, at least in part, with Debtors' interpretation of the settlement agreement. There is no provision therein prohibiting Debtors from selling property in ways Farmers State Bank has not given its advance consent to. That said, Debtors' plan was long ago confirmed, and generally, post-confirmation sales must be made "pursuant to non-bankruptcy law."[83]

---

[81] Doc. 108 p. 7 ¶ 6.e.
[82] *Id.* p. 11 ¶ 7.
[83] *In re Golf, L.L.C.*, 322 B.R. 874, 877 (Bankr. D. Neb. 2004) ("Post-

43

But regardless, even if Debtors apply to sell property under § 363, they will need to file an appropriate motion to do so and prove all elements permitting a sale under that Code provision.

That said, the Court does not give Debtors' advance or advisory permission to sell property, or pieces thereof. How each sale would be judged is a matter for factual development after the property, and applicable governing law, is identified. Further, the Court will not issue a blanket order that proceeds of any sale may be applied to plan payments. For example, as required by § 363(e), sales under § 363 are conditioned on providing adequate protection of a secured creditor's interest, and the "commonly accepted method" of providing adequate protection to a secured creditor is to order that liens attach to proceeds of any sale under § 363.[84]

As above, there is no pending sale and no proposed sale before the

---

confirmation sales of assets are accomplished pursuant to terms of the confirmed plan, or, since the debtor is generally outside of the jurisdiction of a bankruptcy court within a short period of time after confirmation of a plan, such sales are accomplished pursuant to non-bankruptcy law."); *see also* 3 *Collier on Bankruptcy* ¶ 363.06 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("property revests upon confirmation in the reorganized debtor and is no longer property of the estate"). No party has briefed the legal authority governing any proposed sale, but rather, the parties are focused on whether Debtors are permitted by the settlement agreement to sell property. The Court does not rule on this unbriefed legal issue.

[84] *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995). Under § 1206, governing sales of farmland "free of interest," proceeds of such sales "shall be subject to such interest."

Court. There is no contested matter for the Court to rule on for this portion of Debtors' pending motions,[85] other than to note the parties' settlement agreement does not prohibit sales in ways other than the "consented-to" sales outlined therein.

### 5. *Application of Proceeds from Prior Sale of Ten-Acre Tract*

Finally, Debtors seek an order from this Court that the net proceeds from the sale of the ten-acre tract previously authorized should be applied to the 2024 plan payment, rather than to reduction of the principal of the real estate claim.[86] Farmers State Bank objects and argues that proceeds must be applied to the real estate claim and then the Bank will adjust the amortization of plan payments accordingly.

The proceeds from the exercise of the option on the ten-acre tract were addressed in the parties' agreement, as follows:

> The option price shall be $35,000. If the option is exercised, the net proceeds will be paid to Farmers.
> . . .
> The proceeds from any land sales on these options shall be applied to the Real Estate Claim and Farmers will then adjust the regular payments so as to retain the same amortized payment structure. Put differently, any option sale will reduce the plan payment on the Real Estate Claim. As such, the parties shall provide written

---

[85] *See* cases cited *supra* note 79.

[86] Debtors' motion asks that proceeds of the sale go toward payment of the Marshall County real estate taxes, and then "[t]he balance to Farmers State Bank for payment on Debtors' Plan payment due to Farmers State Bank in 2024." Doc. 255 p. 2.

45

> notice to the Chapter 12 Trustee of any such sale and the new
> resulting Real Estate Claim and payment amount. This Order
> shall constitute approval of the proposed sales free and clear of any
> liens pursuant to 11 U.S.C. § 363(f).[87]

The parties were explicit about the treatment of the proceeds from the sale options—they should be applied to reduction of the real estate claim. If Debtors contend they are selling the property under the option granted by the settlement agreement, the exercise of the option specifically requires that the proceeds from exercise of the option be applied to reduction of the real estate claim.

If Debtors are arguing that they instead sold this piece of real property under the "general" language in the settlement agreement regarding sales of real property, they would still not be successful. That language does permit application of proceeds from sales of real property to be applied to the next-due plan payment,[88] but also forbids sales of real property for less than "the applicable mortgage limit."[89] There is no assertion that the sale of the ten-acre tract meets these terms. As a result, the "general" sales language would

---

[87] Doc. 108 p. 9-11 ¶ 7.

[88] *Id.* p. 7 ¶ 6.e. ("the proceeds . . . shall be paid to Farmers and applied to the Real Estate Claim with such proceeds being first applied to the plan payment then due Farmers on the Real Estate Claim if the Debtors so request").

[89] *Id.* ("Farmers shall consent to the sale of any real property against which it holds a mortgage lien to the extent the property is sold for not less than the applicable mortgage limit").

not have permitted this ten-acre parcel to be sold and proceeds applied in the manner requested.

Debtors appear to argue a third method for sale of the ten-acre tract, contending they should be able to make this sale *not* as an exercise of the option or under the settlement agreement at all, but under § 363 generally. But even if Debtors could sell this property now under § 363, Debtors did not meet their burden to show how Farmers State Bank would be adequately protected by applying the proceeds to a plan payment rather than providing Farmers State Bank a lien in the proceeds of the sale. Debtors did not establish the reduction of the equity position on the collateral for the Bank's claim or even conclusively establish the mortgage limit on the real property at issue. Mr. Huninghake testified the mortgage limit on the property was $514,000, but Mr. Ebert testified as to multiple mortgages covering the identified tract of land, and that the mortgages covering that tract also cover other tracts.

For example, Debtors' motion alleges two mortgages on the real property at issue, one dated April 27, 2010, with a maximum lien of $190,000, and one dated August 27, 2015, with a maximum lien of $324,000.[90] But as Farmers State Bank points out, there are other mortgages covering Debtors'

---

[90] Doc. 255 p. 1-2; *see also* Farmers State Bank Exhibit T p. 6-7.

real property, as all the real property mortgages granted by Debtors are cross-collateralized.[91] Debtors' total debt on real property secured to the Bank is $2,800,000, with mortgage limits of $2,849,000—these final two numbers are undisputed. In other words, regardless of the mortgage limit on an individual piece of real property, Farmers State Bank has an overall equity cushion on the real estate claim of only $49,000.

There was simply no mathematical breakdown showing how the Bank's equity position is impacted by the sale, and Debtors have the burden of proof to show the Bank would be adequately protected despite applying the proceeds of the sale to a plan payment rather than to claim reduction. As a result, even if Debtors could ignore the option language or general language of the settlement agreement, they have not carried their burden to show they should be able to sell this piece of real property under the Code to apply the proceeds as they request.

Debtors' request to apply the sales proceeds from the ten-acre tract to their 2024 plan payment is denied. Farmers State Bank should apply the net proceeds of the sale of the ten-acre tract to reduction of the real estate claim.

## III.    Conclusion

Debtors' vigorously negotiated settlement with Farmers State Bank

---

[91] *See* Farmers State Bank Exhibit S and Exhibit T.

resulted in an agreement extremely favorable to Debtors. Nonetheless, Debtors appear to have "buyer's remorse"[92]—they wish to keep the provisions of their settlement with Farmers State Bank that are beneficial to them, but no longer wish to be bound by other provisions they no longer find desirable. As detailed more fully herein, the Court denies in part and grants in part Debtors' requested relief. To summarize the rulings made herein:

- The Court grants that portion of Debtors' motion to modify seeking a modification as to payment time, from June 15 to July 15 each year.

- The Court denies that portion of Debtors' motion to modify seeking reduction of the payments made in 2022 and corresponding change to the 2024 payment amount.

- The Court denies that portion of Debtors' motion to sell seeking to apply the sales proceeds from the ten-acre tract to their 2024 plan payment.

All other requested relief would be advisory only, and the Court awaits a contested matter upon which it must rule.

Debtors' motion to modify the pretrial order[93] to correct a typographical mistake is granted.

---

[92] *In re Hall*, No. 06-40872, 2010 WL 1730684, at *6 (Bankr. D. Kan. Apr. 28, 2010) ("This is a case of buyer's remorse. Debtor is attempting to rescind the Settlement Agreement simply because he no longer wishes to be bound by its terms.").

[93] Doc. 283.

**Judgment**

Judgment is hereby entered granting in part and denying in part Debtors' motion to modify and motion to sell. The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**It is so Ordered**.

# # #

Case 21-40090    Doc# 299    Filed 12/15/23    Page 50 of 50